and I represent the employee in this case, Therese Dodaro. Ms. Dodaro was injured on October 20, 2000, while exercising at the police academy training course. She was a cadet and entered the academy on October 10, 2000. In order to secure information on what medical rights she had, she went to the police union, the FOP, and was told she was not under the union contract. After filing her claim for injuries with the police department... Mr. Kavler, for a moment, did she make a claim under the police pension fund? No. Okay, go ahead, proceed. Thank you. She then received two letters subsequent to the filing from the Committee on Finance. The first one dated January 24, 2001, saying that her case was not compensable  and then there was no causal connection of accident to injury. A carbon copy of that letter went to the Police Not Sworn Personnel Department. A subsequent letter dated April 17, 2001, came from the Committee on Finance and the claim was denied on the basis that the accident did not arise out of the course of her employment and that she should put her claim through group benefits. At trial, the former Deputy Superintendent, Assistant Deputy Superintendent Ivan Rittenbrook testified that the claimant was a net will employee and that was agreed to by Ms. Johnson, the Deputy Director of Research and Development for the Police Department. The first issue that I would raise with your honors is the question of the standard of review. The circuit court held that the standard of review was based on a mixed question of law and fact. So that clearly a Ceronius standard would apply, which meant that some deference should be given to the administrative body. Well, it's a higher standard of deference than even the manifest waive. It's a fairly high standard. Yes. Is it your position it's an incorrect standard of review? No, I believe that's correct. But Judge, even if that wasn't, that isn't the perfect standard of review, a subsequent case that's mentioned in the City of Belvedere said that there should still be some deference, even in a question of law, if it's a de novo review, given to the administrative body based on their experience and expertise. But we would submit that the higher standard applies. I would point out respectfully that two separate panels of the Industrial Commission over several years came to the conclusion that the specific language, which is the issue in the case at bar, the meaning of duly appointed member of the police department in a city of over 200,000, that those words meant a police officer, a sworn police officer who is not an at-will employee. Well, the critical issue is the meaning of the statutory exclusion, the phrase duly appointed member of the police department. Does it include both recruits and sworn police officers? Are you aware of any legislative history on this specific issue? No. We looked and I didn't see any. It seems to me that the first impression that the plain meaning of the words, the first impression that a person gets in reading those words is the plainest meaning of those words. What comes to mind when you consider the words a duly appointed member of a police department? It isn't, in my opinion, a cadet. It's not a person who works in the motor pool. It's not a secretary. It's a police officer. In this case, my client never took the oath of office. Second, and interestingly enough, I also handled the first case that's in our brief, the Theobald case, that the commission also came to the conclusion in Pauline Theobald's case that she too was an employee at will, a civilian employee of the department. Between the time of Theobald in 95 and the time of this accident in 2000, the city took no steps to correct any of the forms and obligations that a recruiter, a cadet would fill out and to more likely make her a member of the department. Mr. Keppel, the question comes to mind. If the legislature intended that the statutory exclusion apply only to sworn police officers, the question becomes why did it not specify that as it did in other statutory provisions? My answer to that is because the clear meaning of the words to them was that it meant a police officer only and that it didn't include a recruiter cadet. The implication to me, I mean, if you want to draw, respectfully, Your Honor, if you want to draw the implication that the legislature meant to include all these folks, the opposite also would apply to me and that doesn't give deference to the administrative body under that clear standard. I would say that there's an equal implication that it didn't mean to apply that if the legislature meant to include those folks. When you look at the totality of the language in 1A1, you will see that it applies to practically every public employee from practically every agency, including the commission and the legislature. So I would submit to you that if the legislature intended to include recruits and the like, in that language, they would have. And that's in line with the decisions of the commission. The significance of the oath, to me, is something that needs to be considered in this case. All throughout our history, a person is not empowered to act in his official capacity until they take that oath. Respectfully and rhetorically, I would point out to you, what if you had a circuit court judge who had an unexpired term who decided to run for the appellate court? They had already taken their oath as a circuit court judge. And they filed their nominating petitions, all of the obligations that they have in getting into the primary. They won the primary. They won their final election. And they still had that oath as a circuit court judge. But they never took the oath of an appellate court judge. Would they be a member of the appellate court? I don't believe anyone in this room would say to the contrary that they could be considered a member of the appellate court and could enter an order. Just recently with President Obama, with his oath, the Chief Justice babbled a couple of words to the extent in the President's mind and his advisors that they had him retake the oath because some pundit later on, some expert could say, you know, he really isn't the President because he didn't properly take the oath. The oath has some meaning. And I believe it has some meaning in this case. Recently, this case, in a case, and I'm going to murder the name, a Scribble versus Workers' Comp Commission said that this characterized, it was an employee and a contractor case. The most important factor in the relationship of the work performed to the respondent's business is a factor of great significance in determining what the relationship is. The label placed upon the relationship in the agreement in which the parties were operating is but a minor consideration. So whatever you want to call her, if the police department treated her in a fashion unlike police officers, she wasn't a police officer in their mind either. And that is in line with this case that's only three weeks old today. In 1906 and 1970, I pointed out the two cases that are appellate court cases in Illinois. In Keneally v. City of Chicago, in a mandamus action where a city patrol officer was asking to be put on the payroll, he was found to be duly appointed by the superintendent, consented to by the mayor, to the office of patrolman. And the quoted language of that case is, and by virtue of said office, he became a member of the department. So what a member meant to that court in that case was that they didn't become a member of the department until they took that oath. And that's the only case that I could find directly on what member meant to a police officer. There was a subsequent case, Edward v. Marion, where under Cities and Villages, that act, a police chief and a fire chief would be considered, if they hadn't taken their retirement before they were appointed police or fire chief, they would be considered as retiring as of the date of their last rank, not exempt rank, but if they were a lieutenant or a captain, they would be retiring at that rate. And they mentioned the term, if a member of the department became the chief, they wouldn't make a cadet a member. That would be an active patrolman or fireman. In California, we found another statute that no badge is given to any person who is not a duly appointed member of the California Highway Patrol. So in California, they also felt that a duly appointed member could only be a police officer. I would submit that, one other thing, when you look at the personnel file of the claimant, they refer to her in the capacity of recruit, cadet, member, probationary police officer, they can pick and choose whatever nomenclature the city wishes to use. If it suited their purpose to name her as a member of the department, they would allege that she's not entitled to workers' comp benefits. On the other hand, if they concluded that she was a recruit or a cadet, and she went out and effected an arrest in an altruistic fashion, and the city was sued for her conduct, they could come in and refuse to come in and defend an indemnifier on the basis that she wasn't a police officer. The election is theirs. So I would submit to you, when all is said and done, when you give the police officer the right to be a member of the department, that she is a member of the department. And if you come to the conclusion that the commission due deference on two separate occasions, which I don't believe the circuit court did, because nowhere in their decision does it say that they considered the opinions and gave deference to the circuit court, they came up with a solution based on pension and the like, which I believe is a red herring, I believe all we have to look at and give credence to is the plain meaning of the words, what do they mean. And if you come to the conclusion when you first look at those words that they mean a police officer, I believe that would have been apparent to the members of the legislature as well. So in sum, I believe that my client, Ms. Dodaro, never became a member of the Chicago Police Department, she never took an oath, she was never considered an officer, and coming up at this late date to deny her benefits would be an unfair exercise of the law. Thank you very much. Good morning, your honors. May it please the court, my name is Joseph Zwick, I represent the appellee in this case, Chicago Police Department. Your honor, I'd like to address first of all the point counsel just made or the analogy with regard to circuit court judges and possibly the police department, and I think it's important to understand that the judge is not an appellate court judge and is not possibly making it to the appellate court bench. Regardless, in that circumstance, counsel is correct, that individual is not an appellate court justice and has not taken the oath of office to be served on the appellate court, but he is still a member of the judiciary. And so the point is that the term duly appointed member is much broader than a sworn officer. If the legislature intended this to be so narrowly construed, to be limited to sworn officers, they would have used the words sworn and they would have used the word officer. Instead, they chose to use the word duly appointed member. As counsel pointed out, during the initial process when Ms. Dodaro began at the academy, she completed several documents, several forms, and on those she was consistently referred to as a member. Her date of appointment on the forms was October 10 of 2000. She was appointed member of the police department on October 10 of 2000. To get to that point, she had to undergo testing, physical testing, medical testing, and written testing. Counsel, is there a difference in the authority that a sworn police officer can exercise and Mr. Darrell could exercise while she was a recruit? There is a difference. And as Mr. Gallagher explained, it's a training mechanism because the purpose of the academy is to train these individuals for the risks they're going to encounter on the streets. And the purpose of the Workers' Compensation Act is to protect employees against risks and hazards peculiar to the work that they're hired to do. And in this case, the petitioner herself, Mr. Darrell, and Mr. Rittenberg both agreed that the risks associated with the academy are similar to the risks that the officers face when they're patrolling the streets. You mean in terms of a risk of some type of physical injury? Correct. And that's what, in this case, is why the pension issue is an important issue. Because if you were to accept the standard claim it chooses to present, that it's the fact of taking an oath of office that makes someone duly appointed for purposes of the Workers' Compensation Act, we submit that it's an arbitrary standard. When considered in the context of the Workers' Compensation Act, because by, as the facts in this claim demonstrate, there is nothing that would change by the oath of office in terms of the risks associated with cadets in training at the academy. Did she take any type of an oath of office? Well, she signed a pledge that we would submit as an oath, and an oath is defined as a written pledge promising to protect the Constitution, et cetera, et cetera. And she signed that oath as an honored and honorable member of the police department. Any other issue like that that would exemplify that she was essentially operating as a police officer, as an appointed police officer? I'm sorry? Any other indicia such as that that would weigh in the fact of whether or not she was a police officer? Any other indicia? Yes. Indicia of other things like that. Oh, I'm sorry. Well, yes, I mean, there were several forms in terms of what she did at the academy that she signed besides the law enforcement code of ethics. There was the injury on duty form where they referred to her as a member. But also, Your Honor, beyond what she signed at the academy, her own testimony was that she was instructed by all police officers. She testified that outside of the academy she was considered a civilian. Inside the academy she was clearly at the control of police officers who were training her to become a patrol officer. And she obtained all her instruction, all the control from those police officers training her to become a police officer. Another factor to consider in this, Your Honor, is the Police Training Act, the Illinois Police Training Act, which defines a recruit as any full-time or part-time law enforcement officer who is enrolled in an approved training course, which she was. And she is defined by the Illinois Police Training Act as a full or part-time law enforcement officer. Or the definition of recruit incorporates that in its definition. But I'll also point out in the purpose, the stated purpose of the Police Training Act, the legislature noted that the purpose was to create an Illinois law enforcement training board. For the purpose of encouraging and aiding municipalities in their efforts to raise the level of law enforcement by upgrading and maintaining a high level of training and standards for law enforcement executives and officers. And goes on to add, law enforcement support personnel under this act. So the legislature, not only in terms of the Workers' Compensation Act, in using a broader term than sworn police officer, recognizes that the police department is made up of more than just the police department. It's the police officers, their support personnel that goes hand-in-hand in running a police department. And they can fall under the control of the Illinois law enforcement training board. At what point would she become a sworn police officer? Many departments have what they call probationary status. If she had not been injured while she was at the academy, she completed the academy and then steps into a squad car and gets injured. At what point, what's the line of demarcation? Why don't you go from being a recruit to being a police officer? Well, she's a police officer in training as a recruit, so she's still a probationary police officer. But in terms of achieving sworn status, counsel is correct. The sworn status, for purposes of the police officer recognizing that this person is now fully trained to go on the street and realize the benefits for society of their training, is that point where they've taken the oath of office. Because at that point, the police department has set up a mechanism whereby the officers are properly trained. And they've recognized that this is the level that the department would like them to be in order to go out on the streets. And that's after they go through the training at the academy? That is correct. As I ask Mr. Kaplan, do you have any legislative history you can refer us to that bears on this issue one way or the other? No, we don't have any legislative history specifically addressing the duly appointed member. The only thing I can point to is the Illinois Police Training Act and the application of the definition of recruit in the Illinois Police Training Act. And the stated legislative intent of the Workers' Compensation Act, again, to protect employees against risks and hazards peculiar to the employment. And in this case, the risks and hazards of training at the academy go hand in hand with the risks and hazards that a police officer has to face. So you're in effect saying simply that a recruit is a duly appointed member, right? Correct. And how does a recruit get to the academy? Well, a recruit gets to the academy by taking a written test, by passing a written test, physical test, medical examination, and then after that, then they're appointed to start at the academy. On day one at the academy, they begin to contribute benefits to the pension fund. That may be, but so to do an analogy, it's like going to college, isn't it? The requirements to go to college, you have to take certain exams, have GPA and ACT and SAT scores. Isn't this really just an educational enterprise, the academy? Yes. So you're saying that sworn police officers can go and take courses or training and other people who say, I'd like to have a career in law enforcement, my employer says I have to complete a course of training. Well, no, because it is similar. You're right, Your Honor, but it's different in the fact that this is the Chicago Police Department's training academy. And the individuals who are training at this academy are training to be sworn officers. But not duly appointed members. They already are duly appointed members. They're paid by the police department, they pay into the pension fund, and they receive the same benefits as that same sworn officer who's been on the streets for 20 years if they receive an injury. Now, is it clear, and is it your position, that there is a remedy for this claimant, similar to under the Act, that there is no quibble about that? Yeah, that's correct. She has the same remedy to pursue that an officer with 20 years' experience would have, and that is to submit a claim before the pension board. And Mr. Gallagher confirmed that, he confirmed that even as the date of the hearing, many years after, she still had the right at that time to submit the claim to the pension board. And that, Your Honor, is a clear basis by which to judge the standard of duly appointed member. And that is, once they start contributing pension, or benefits to the, I'm sorry, contributing to the pension fund, and they are entitled to the same protections for injuries on duties, for injuries from the risks and hazards peculiar to police work, they are duly appointed members because they have the same protections as far as work injuries concerns, risks and hazards of the employment that the veteran police officer of 20 years has, as opposed to the arbitrary, the arbitrariness of administering an oath. If it was simply an oath, the police department could say, all right, let's move the oath up to the day one of the academy, but nothing would change about the risks and hazards of the employment. The risks those recruits in training, those probationary police officers are facing at the academy, nothing would change about the training and the preparedness that they have to go through to become ready for street duty. The only thing that would change is the arbitrariness of moving the oath up. But as far as setting the date, the date that they start contributing to the pension fund, that's the date that they now have the same protections for injuries that occur because of the peculiar risks and hazards of police work that the officer of 20 years has. So with that, Your Honor, the city would propose that the decision of the circuit court judge should be affirmed. Thank you, counsel. Revolver, please. Before you begin on that issue, I noticed that in the evidence, at one point, the claimant was issued a personnel card by the Chicago Police Department that assigned the claimant an appointment date of October 10, 2000. What do you make of that? I would say that that's the same thing as matriculating to a university. You're getting in at that point. You're not appointed to a police officer's position. You're admitted into the academy. There's no similarity in my mind of risks that a cadet in a police academy has to a police officer on the street. There was an old workers' comp case that referred to the milieu of the street. And the milieu of the street is 180 degrees different than the risk that a cadet would face in a police academy. No one's shooting at a cadet. No one's facing a domestic violence case where the people are out of control. None of that is a recruit for that case. So there's no equivalency in my mind as to the risks that the academy and on the street as a police officer would have. The pledges that counsel refers to are mostly in the future tense. She will comport herself as an honorable member of a police department. She will be ethical, that type of language. So it's unclear as to whether those pledges apply to that moment in time at the academy or they will apply when she's sworn in as a police officer. I would argue that the latter is true. Is there a difference between a pledge and an oath under Illinois law? I don't see the same equivalency, Judge, respectively. We have, I believe, an enactment that qualifies only certain people to administer oaths. An oath seems under the state law to be an administrated type of act. A judge or a clerk. Or a notary public. But none of that's done for the pledges. Counsel said that support personnel, mentioned support personnel. If you extrapolate support personnel in this circumstance, where does it end? Does it end at a recruit? Are you going to start saying that a secretary is a member? Are you going to start to say that the folks who run the cafeteria are members? I mean, where does it end? In my mind, the dichotomy is the sworn officer and the recruits are separate. She was always told at the academy that she was not a police officer. She had no authority to go out and act as a police officer. She was never allowed to take her gun outside the academy. She only used it on the range there. She was never given any indicia, any badge, any uniform. She wore sweats at first and then a beige uniform. She had no vests, nothing like that, out on the street. And she was always at will. A police officer, a member of the department, is not at will. He can only be fired by the board, by a police board. Do you know how firemen trainees are, firemen trainees? How are they dealt with? Basically, I think they go, there's a fire academy here in Chicago, and I believe they're trained the same way. And I don't believe they would be members of the department, of the fire department, until they're sworn. They take an oath, too. We're plead throughout our system, no official acts without taking an oath. And I would submit that my client never became a member of the department and the circuit court failed to grant the due deference to the decisions of the commission. And I'd ask that the decision of the commission be affirmed, that the circuit court order be reversed. And thank you for your time. Thank you, counsel.